1  RICHARD T. MULLOY (Bar No. 199278)
   **DLA PIPER US LLP**
2  401 B Street, Suite 1700
   San Diego, CA  92101-4297
3  richard.mulloy@dlapiper.com
   Tel:  619.699.2700
4  Fax:  619.699.2701

5  EDGAR H. HAUG (*Pro Hac Vice*)
   ehaug@flhlaw.com
6  THOMAS J. KOWALSKI (*Pro Hac Vice*)
   tkowalski@flhlaw.com
7  VICKI FRANKS (*Pro Hac Vice*)
   vfranks@flhlaw.com
8  GINA M. BASSI (*Pro Hac Vice*)
   gbassi@flhlaw.com
9  ANNE-MARIE C. YVON (*Pro Hac Vice*)
   ayvon@flhlaw.com
10 **FROMMER LAWRENCE & HAUG LLP**
   745 Fifth Avenue, New York, New York 10151
11 Telephone:  (212) 588-0800
   Facsimile:  (212) 588-0500
12
   Attorneys for Defendants
13 OXFORD BIOMEDICA PLC,
   BIOMEDICA, INC., and
14 OXFORD BIOMEDICA (UK) LTD.

15              **UNITED STATES DISTRICT COURT**
16              **SOUTHERN DISTRICT OF CALIFORNIA**

17 BAVARIAN NORDIC A/S,                  CASE NO. 08cv1156-L-RBB

18         Plaintiff,                    **OXFORD BIOMEDICA PLC'S AND**
                                         **OXFORD BIOMEDICA (UK) LTD.'S**
19     v.                                **NOTICE OF MOTION AND MOTION TO**
                                         **DISMISS FOR FAILURE TO STATE A**
20 OXFORD BIOMEDICA PLC,                 **CLAIM, AND LACK OF SUBJECT-**
   BIOMEDICA, INC., and OXFORD           **MATTER JURISDICTION**
21 BIOMEDICA (UK) LTD.,
                                         Date:  November 3, 2008
22         Defendants.                   Time:  10:30 a.m.
                                         Courtroom:  14
23                                       Judge:  The Hon. M. James Lorenz

24                                       Complaint:  June 30, 2008

25

26

27

28

1      PLEASE TAKE NOTICE that on November 3, 2008 at 10:30 a.m., or as soon thereafter

2  as can be heard, in Courtroom 14 of the United States District Court for the Southern District of

3  California, located at 940 Front Street, San Diego, California 92101-8900, Defendants Oxford

4  BioMedica plc and Oxford BioMedica (UK) Ltd. (collectively, "the UK Defendants"), will and

5  hereby do move the Court for an order dismissing Plaintiff Bavarian Nordic A/S's Complaint.

6  The UK Defendants' motion is made pursuant to the Federal Rules of Civil Procedure, Rules

7  12(b)(1) and 12(b)(6), and on the grounds that the Court lacks subject-matter jurisdiction and that

8  the Complaint fails to state a claim upon which relief can be granted.

9      The UK Defendants' motion is based on this Notice, the Memorandum of Points and

10  Authorities in support thereof, and the Declaration of Peter J. Nolan filed herewith, along with all

11  pleadings and exhibits of record and such argument as the Court may entertain at any hearing.

12  Dated:    August 18, 2008        DLA PIPER US LLP

14                By:   s/  Richard T. Mulloy
                     Richard T. Mulloy
15                   Attorneys For Defendants,
                   OXFORD BIOMEDICA PLC,
16                   BIOMEDICA, INC., AND
                   OXFORD BIOMEDICA (UK) LTD.

18                 Of Counsel:

19                 Edgar H. Haug (PRO HAC VICE)
                   EHAUG@FLHLAW.COM
20                 Thomas J. Kowalski (PRO HAC VICE)
                   TKOWALSKI@FLHLAW.COM
21                 Vicki Franks (PRO HAC VICE)
                   VFRANKS@FLHLAW.COM
22                 Gina M. Bassi (PRO HAC VICE)
                   GBASSI@FLHLAW.COM
23                 Anne-Marie C. Yvon (PRO HAC VICE)
                   AYVON@FLHLAW.com
24                 FROMMER LAWRENCE & HAUG LLP
                   745 Fifth Avenue, New York, New York 10151
25                 Telephone:  (212) 588-0800
                   Facsimile:  (212) 588-0500

27                 Attorneys for Defendants,
                   OXFORD BIOMEDICA PLC,; BIOMEDICA, INC.,
28                 and OXFORD BIOMEDICA (UK) LTD.

1   RICHARD T. MULLOY (Bar No. 199278)
    **DLA PIPER US LLP**
2   401 B Street, Suite 1700
    San Diego, California 92101
3   Telephone:  (619) 699-4787
    Facsimile:  (619) 699-2701
4   richard.mulloy@dlapiper.com

5   EDGAR H. HAUG (*Pro Hac Vice*)
    ehaug@flhlaw.com
6   THOMAS J. KOWALSKI (*Pro Hac Vice*)
    tkowalski@flhlaw.com
7   VICKI FRANKS (*Pro Hac Vice*)
    vfranks@flhlaw.com
8   GINA M. BASSI (*Pro Hac Vice*)
    gbassi@flhlaw.com
9   ANNE-MARIE C. YVON (*Pro Hac Vice*)
    ayvon@flhlaw.com
10  **FROMMER LAWRENCE & HAUG LLP**
    745 Fifth Avenue, New York, New York 10151
11  Telephone:  (212) 588-0800
    Facsimile:  (212) 588-0500
12
    Attorneys for Defendants,
13  OXFORD BIOMEDICA PLC,
    BIOMEDICA, INC., and
14  OXFORD BIOMEDICA (UK) LTD.

15              **UNITED STATES DISTRICT COURT**
                **SOUTHERN DISTRICT OF CALIFORNIA**
16

17  BAVARIAN NORDIC A/S.,                  CASE NO. 08cv1156-L (RBB)

18              Plaintiff,                 **MEMORANDUM OF POINTS AND**
                                           **AUTHORITIES IN SUPPORT OF**
19  vs.                                    **OXFORD BIOMEDICA PLC'S AND**
                                           **OXFORD BIOMEDICA (UK) LTD.'S**
20  OXFORD BIOMEDICA PLC,                  **MOTION TO DISMISS FOR FAILURE**
    BIOMEDICA, INC., and                   **TO STATE A CLAIM AND LACK OF**
21  OXFORD BIOMEDICA (UK) LTD.,            **SUBJECT-MATTER JURISDICTION**

22              Defendants.                Date:  November 3, 2008
                                           Time:  10:30 a.m.
23                                         Courtroom:  14
                                           Judge:  The Hon. M. James Lorenz
24
                                           Complaint Filed:  June 30, 2008
25

26

27

28

DLA PIPER US LLP
SAN DIEGO

1

## TABLE OF CONTENTS

2

3    TABLE OF AUTHORITIES............................................................................................ii

4    I.    INTRODUCTION AND SUMMARY OF ARGUMENT.......................................1

5    II.   FACTUAL BACKGROUND. ..............................................................................2

6          A.   The Parties. ..............................................................................................2

7          B.   Summary of the Complaint. .....................................................................2

8    III.  THE COURT SHOULD DISMISS BN'S COMPLAINT AGAINST
           OXFORD BIOMEDICA PLC AND OXFORD BIOMEDICA (UK)
9          LIMITED...........................................................................................................3

10         A.   BN Cannot State a Claim for Relief Because the Alleged
                Infringing Acts Are Protected By the Safe Harbor Provision of
11              Section 271(e)(1). ....................................................................................3

12         B.   BN Cannot Establish Proper Subject-Matter Jurisdiction Because
                the TroVax® Vaccine Has Not Been Approved by the FDA. ....................6

13
14   IV.   CONCLUSION. .................................................................................................7

15

16

17

18

19

20

21

22

23

24

25

26

27

28

WEST\21495723.1
354423-000002                                    CASE NO. 08-CV-01156-L-RBB

# TABLE OF AUTHORITIES

**Cases**

*Cahill v. Liberty Mut. Ins. Co.*,
80 F.3d 336 (9th Cir. 1996). ........................................................................................... 3

*Classen Immunotherapies, Inc. v. Biogen IDEC*,
381 F.Supp.2d 452 (D. Md. July 22, 2005). ............................................................. 4, 5

*Genentech, Inc. v. Insmed Inc.*,
436 F.Supp.2d 1080 (N.D. Cal. June 30, 2006). ........................................................... 5

*MedImmune, Inc. v. Genentech, Inc.*,
549 S. Ct. 764 (2007). .................................................................................................... 6

*Merck KGaA v. Integra Lifesciences, Ltd.*,
545 U.S. 193 (2005). ...................................................................................................... 4

*Navarro v. Block*,
250 F.3d 729 (9th Cir. 2001) ......................................................................................... 3

*Neitzke v. Williams*,
490 U.S. 319 (1989). ...................................................................................................... 3

*Shaunnessey v. Monteris Medical, Inc.*,
554 F.Supp.2d 1321 (M.D. Fla. May 8, 2008). ............................................................. 6

*Telectronics Pacing Sys., Inc. v. Ventritex, Inc.*,
982 F.2d 1520 (Fed. Cir. 1992). ................................................................................. 4, 5

**Statutes**

35 U.S.C. § 271(a) (2006). ............................................................................................ 4

35 U.S.C. § 271(e)(1) (2006). ....................................................................................... 4

**Other Authorities**

U.S. Const. art. III, § 2, cl. 2. ........................................................................................ 6

**Rules**

Fed. R. Civ. P. 12(b)(1). ................................................................................................ 6

Fed. R. Civ. P. 12(b)(6). ................................................................................................ 3

1    **I.     INTRODUCTION AND SUMMARY OF ARGUMENT.**

2          The Court should dismiss Bavarian Nordic A/S's ("BN's") Complaint against Oxford

3    BioMedica plc ("OXB") and Oxford BioMedica (UK) Ltd. ("OBM UK") (collectively, "the UK

4    Defendants") because BN has failed to allege any infringing acts committed by the UK

5    Defendants.

6          This is a patent infringement case.  BN filed its Complaint against BioMedica, Inc.,

7    Oxford BioMedica (UK) Ltd., and Oxford BioMedica plc (collectively, "Defendants").[1]

8    (Compl. ¶¶ 5-7.)  BN alleges that the UK Defendants have infringed, through the experimental

9    research and testing of their TroVax® vaccine, three of BN's patents:  (1) U.S. Patent No.

10   6,761,893 ("the '893 patent"); (2) U.S. Patent No. 6,913,752 ("the '752 patent"); and (3) U.S.

11   Patent No. 7,335,364 ("the '364 patent") (collectively, the "asserted patents"), which generally

12   concern a modified vaccinia Ankara ("MVA") virus variant.  (Compl. ¶¶ 2, 36.)

13         BN's Complaint should be dismissed because it is based on actions that fall well within

14   the safe harbor protection of 35 U.S.C. § 271(e)(1).  Even assuming that the UK Defendants

15   engaged in the activities alleged in the Complaint, BN has failed to state a claim for relief

16   because all of the alleged activities concerning the TroVax® vaccine are reasonably related to

17   obtaining regulatory approval by the Food and Drug Administration ("FDA").  Such activities

18   are protected by the safe harbor provision of Section 271(e)(1), and are therefore not infringing

19   acts.  BN apparently does not believe that the safe harbor provision applies to those actions

20   because of an alleged commercial contract related to that product.  This argument fails, however,

21   because any alleged commercial activity involving the TroVax® vaccine was also reasonably

22   related to the research and development of the TroVax® vaccine, and is therefore exempt from

23   infringement.  Because the research and development activities concerning the TroVax® vaccine

24   cannot constitute infringement, the Complaint should be dismissed.

25   /////

26   /////

27   _____

28   [1] BN also alleges that BioMedica, Inc. infringes the asserted patents.  BioMedica, Inc. has concurrently filed a
     separate motion to dismiss.

1    In addition, BN cannot satisfy its burden to establish that subject-matter jurisdiction

2    exists.  BN filed an infringement suit against the UK Defendants on the basis that the UK

3    Defendants allegedly intend to eventually market the TroVax® vaccine, and are conducting

4    clinical trials for that purpose.  But the FDA has not yet approved the TroVax® vaccine, and

5    there is no guarantee that FDA approval will ever be granted.  Because no case or controversy

6    exists between BN and the UK Defendants, the Court should dismiss the Complaint for lack of

7    subject-matter jurisdiction.

8    **II.    FACTUAL BACKGROUND.**

9        **A.    The Parties.**

10    Bavarian Nordic A/S ("BN") is a Danish stock corporation (aktieselskab), with its

11    principal place of business in Denmark.  (Compl. ¶ 4.)  BN is the assignee of the '893 patent, the

12    '752 patent, and the '364 patent.  (Compl. ¶¶ 13-19.)  These patents relate to BN's MVA-BN®

13    technology, an attenuated strain of MVA virus, which is used in human vaccines.  (Compl. ¶¶

14    13-19.)

15    BioMedica, Inc. ("BioMedica") is a Delaware corporation with its principal place of

16    business in San Diego, California.  (Declaration of Peter J. Nolan ("Nolan Decl.") ¶ 4.)  It is a

17    wholly-owned subsidiary of Oxford BioMedica plc.  (Nolan Decl. ¶ 4.)  Oxford BioMedica plc

18    is a public limited company incorporated in England and Wales, and is headquartered in Oxford,

19    United Kingdom.  (Nolan Decl. ¶ 2.)  Oxford BioMedica (UK) Ltd. is a private limited company

20    incorporated in England and Wales.  (Nolan Decl. ¶ 3.)  It is a wholly-owned subsidiary of

21    Oxford BioMedica plc and has its principal place of business in Oxford, United Kingdom.

22    (Nolan Decl. ¶ 3.)

23        **B.    Summary of the Complaint.**

24    BN's Complaint alleges that Defendants have directly infringed, contributorily infringed,

25    or induced infringement of, various claims of the '893, '752, and '364 patents.  (Compl. ¶¶ 1,

26    36-38.)  BN seeks a judgment that the defendants have directly and indirectly infringed the

27    asserted patents, a permanent injunction preventing the defendants from further infringing the

28    asserted patents, damages, and attorneys' fees.  (Compl. ¶¶ 1-5.)

2

1    BN's Complaint draws no distinction between the three defendants in its infringement

2  allegations, and alleges substantially all of the facts supporting its infringement claims against

3  the Defendants based only "on information and belief." (Compl. ¶¶ 1-5, 25-38.) BN generally

4  alleges that Defendants are developing an oncology product, the TroVax® vaccine, and are

5  sponsoring FDA-approved clinical trials regarding that vaccine. (Compl. ¶¶ 25, 30-32.) BN

6  also alleges that Defendants published reports concerning the TroVax® vaccine in clinical trials.

7  (Compl. ¶ 28) BN further alleges, on information and belief, that Defendants have received

8  payments through an agreement with a French pharmaceutical company, sanofi-aventis,

9  regarding the development of the TroVax® vaccine. (Compl. ¶ 29.) Thus, each of the alleged

10 acts of infringement in BN's complaint are directly related to development and clinical activities

11 regarding the TroVax® vaccine.

12 **III.    THE COURT SHOULD DISMISS BN'S COMPLAINT AGAINST**
13 **OXFORD BIOMEDICA PLC AND OXFORD BIOMEDICA (UK) LIMITED.**

14       **A.    BN Cannot State a Claim for Relief Because the Alleged Infringing**
15 **Acts Are Protected By the Safe Harbor Provision of Section 271(e)(1).**

16       Rule 12(b)(6) of the Federal Rules of Civil Procedure requires a court to dismiss a

17 complaint when the plaintiff has failed to state a claim upon which relief may be granted. Fed.

18 R. Civ. P. 12(b)(6). Dismissal is proper where the complaint fails to allege sufficient facts to

19 support a cognizable legal theory. *See, e.g., Navarro v. Block*, 250 F.3d 729, 732 (9th Cir.

20 2001). "If as a matter of law 'it is clear that no relief could be granted under any set of facts that

21 could be proved consistent with the allegations,'" a claim must be dismissed "whether it is based

22 on an outlandish legal theory or a close but ultimately unavailing one." *Neitzke v. Williams*, 490

23 U.S. 319, 327 (1989). In this inquiry, the court must accept the complaint's allegations as true

24 and construe the complaint in the light most favorable to the plaintiff. *See Cahill v. Liberty Mut.*

25 *Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996).

26 /////

27 /////

28 /////

1      It is an act of infringement to make, use, offer to sell, or sell any patented invention

2 within the United States.  35 U.S.C. § 271(a) (2006).  Under 35 U.S.C. § 271(e)(1), however,

3 certain actions are exempt from infringement.  Section 271(e)(1) provides:

4           It shall not be an act of infringement to **make, use, offer to**
          **sell, or sell** within the United States or import into the

5           United States a patented invention … solely for uses
          **reasonably related to the development and submission of**

6           **information under a Federal law** which regulates the
          manufacture, use, or sale of drugs or veterinary biological

7           products.

8 35 U.S.C. § 271(e)(1) (2006) (emphasis added).  The Supreme Court recently gave an expansive

9 view to the exemption, stating that the statutory text of Section 271(e) "provides a wide berth for

10 the use of patented drugs in activities related to the federal regulatory process."  *Merck KGaA v.*

11 *Integra Lifesciences, Ltd.*, 545 U.S. 193, 202 (2005).  The Court held that "§ 271(e)(1)'s

12 exemption from infringement extends to all uses of patented inventions that are reasonably

13 related to the development and submission of any information under the [Food, Drug, and

14 Cosmetic Act]."  *Id.*; *see Telectronics Pacing Sys., Inc. v. Ventritex, Inc.*, 982 F.2d 1520, 1521-

15 22 (Fed. Cir. 1992) (conducting clinical trials of an allegedly infringing device, displaying the

16 device at seven medical conferences, and raising funds for the clinical trials by talking with

17 investors, fall within Section 271(e)(1)).

18      *Classen Immunotherapies, Inc. v. Biogen IDEC*, 381 F.Supp.2d 452 (D. Md. July 22,

19 2005) demonstrates that courts broadly construe the "safe harbor" provision of Section

20 271(e)(1).  In *Classen*, two of the defendants conducted clinical studies for vaccines that had

21 been approved by the FDA and were covered by the plaintiff's patents.  *Id.* at 455.  The

22 defendants moved to dismiss the complaint under Rule 12(b)(6) based on the safe harbor

23 provision of Section 271(e)(1).  *Id.*  The plaintiff argued that the safe harbor only applied to

24 drugs that had not yet been approved by the FDA, as opposed to the post-approval activities at

25 issue in that case.  *Id.* at 455-56.  The district court disagreed.  Relying on the Supreme Court's

26 broad interpretation of Section 271(e)(1) in *Merck*, the court determined that the defendants'

27 clinical trial activities were reasonably related to the development and submission of information

28 to the FDA, and thus granted the motion to dismiss.  *Id.* at 456.

4

1    *Genentech, Inc. v. Insmed Inc.*, 436 F.Supp.2d 1080 (N.D. Cal. June 30, 2006) provides

2    further insight into the circumstances that merit safe harbor protection under Section 271(e)(1).

3    In that case, defendants hired a consulting company to conduct experiments for commercial

4    purposes, as well as for FDA purposes, using an allegedly infringing product. *Id.* at 1095. The

5    district court agreed with the defendants that the research conducted by the consulting company

6    fell under the safe harbor protection, and granted defendants' motion for summary judgment. In

7    doing so, the Court held that "even if the allegedly infringing experiments were conducted, in

8    part, for commercial reasons, the experiments would produce information that would be given to

9    the FDA in order to get FDA approval." *Id.*

10    Even assuming the UK Defendants performed the activities alleged by BN, the

11    Complaint fails to state a claim upon which relief may be granted. BN's allegations are based

12    entirely on actions performed for uses reasonably related to the development of the TroVax®

13    vaccine for FDA approval. (Nolan Decl. ¶¶ 5-6.) Participating in and sponsoring FDA-

14    approved clinical trials for the TroVax® vaccine, and publishing reports about the clinical trial

15    findings, all fall squarely within the safe harbor provision of Section 271(e)(1). *See Genentech*,

16    436 F.Supp.2d at 1095; *Classen Immunotherapies*, 381 F.Supp.2d at 456. Because BN only

17    alleges acts that cannot constitute patent infringement, the Court should dismiss the Complaint.

18    Moreover, the UK Defendants have not engaged in a commercial sale or offer to sell the

19    TroVax® vaccine to sanofi-aventis or to any other person or entity. (Nolan Decl. ¶ 5.) BN's

20    only attenuated assertion of commercial activity involving the TroVax® vaccine is a contract

21    between "the defendants"—which apparently includes the UK Defendants *and* BioMedica—and

22    sanofi-aventis. (Compl. ¶¶ 25, 29.) However, even if that contract could be characterized as

23    having some commercial purpose, that does not eliminate the protection afforded by

24    Section 271(e)(1). As in *Genentech*, seeking and receiving funds to conduct research and

25    development for FDA approval is not patent infringement. *Genentech*, 436 F.Supp.2d at 1095;

26    *see Telectronics*, 982 F.2d at 1525 ("using…the derived test data for fund raising and other

27    business purposes" was protected activity and consistent with legislative intent behind Section

28    271(e)(1)); *Classen Immunotherapies*, 381 F.Supp. 2d at 456 (post-approval commercial

5

1    research and development activities for purposes of FDA submissions were also protected under

2    Section 271(e)(1)).  Because BN does not—and cannot—allege any facts supporting its claim for

3    patent infringement against the UK Defendants, the Court should dismiss the Complaint.

4    **B.    BN Cannot Establish Proper Subject-Matter Jurisdiction Because the TroVax® Vaccine Has Not Been Approved by the FDA.**

5

6    A complaint must be dismissed under Rule 12(b)(1) of the Federal Rules of Civil

7    Procedure when the court lacks subject-matter jurisdiction.  Fed. R. Civ. P. 12(b)(1).  Under

8    Article III of the United States Constitution, courts may only adjudicate "actual cases or

9    controversies."  U.S. CONST. art. III, § 2, cl. 2.  To satisfy the requirements of Article III, the

10   plaintiff must sufficiently demonstrate that the dispute is "definite and concrete, touching the

11   legal relations of parties having adverse legal interests," and that the dispute is "real and

12   substantial."  *MedImmune, Inc. v. Genentech, Inc.*, 127 S. Ct. 764, 771 (2007).

13   In *Shaunnessey v. Monteris Medical, Inc.*, 554 F.Supp.2d 1321, 1326 (M.D. Fla. May 8,

14   2008), the court granted a motion to dismiss under Rule 12(b)(1) for lack of subject-matter

15   jurisdiction.  Plaintiff Shaunnessey sued defendant Monteris for alleged infringement of a patent

16   on an apparatus that moved a surgical laser to kill brain tumors.  *Id.*  Monteris was testing its

17   allegedly infringing device and had exhibited its device in at least five separate locations in the

18   United States to generate investment support to further its development for submission to the

19   FDA for approval.  *Id.*  However, the district court granted the motion to dismiss and concluded

20   that there was not sufficient immediacy and reality to provide subject-matter jurisdiction because

21   any FDA approval was years away.  *Id.* at 1324-25.  In addition, the court noted that no party

22   could know whether the approved device would be the same or substantially the same device

23   that was currently being tested.  *Id.* at 1324.

24   Even assuming all the facts as pleaded by BN are true regarding the UK Defendants'

25   actions, the Court lacks subject-matter jurisdiction to decide this case.  Just as the allegedly

26   infringing device in *Shaunnessey* had not yet received FDA approval, BN's complaint

27   acknowledges that the TroVax® vaccine similarly has not been approved by the FDA.  (Compl.

28   ¶¶ 25-26, 28, 30, 37.)  Moreover, there is no way to know for certain if, or when, the TroVax®

6

1   vaccine will be approved or whether the approved vaccine will have the same composition as the

2   version being tested in the FDA-approved clinical trials.  Indeed, further administration of the

3   TroVax® vaccine to patients has been halted, and there are no further plans to administer the

4   TroVax® vaccine, in the TRIST trial.  (Nolan Decl. ¶ 7.)  Because BN's patent-infringement

5   allegations lack the requisite immediacy to establish proper subject-matter jurisdiction, the Court

6   should dismiss the Complaint.

7   **IV.   CONCLUSION.**

8        Even if all the allegations in BN's Complaint are assumed to be true, BN cannot state any

9   claim for relief because the alleged acts of infringement fall squarely within the safe harbor

10  protection of Section 271(e)(1).  Moreover, the Court does not have proper subject-matter

11  jurisdiction because the TroVax® vaccine forming the basis for BN's Complaint has not been

12  approved by the FDA.  Accordingly, the UK Defendants respectfully request that the Court

13  dismiss BN's complaint.

14

15  Dated:  August 18, 2008                    Respectfully submitted

16
                                             DLA PIPER US LLP
17

18
                                             By:   s/  *Richard T. Mulloy*
19                                                 Richard T. Mulloy
                                                   Attorneys For Defendants,
20                                                 OXFORD BIOMEDICA PLC,
                                                   BIOMEDICA, INC., AND
21                                                 OXFORD BIOMEDICA (UK) LTD.

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

OF COUNSEL:

Edgar H. Haug (*PRO HAC VICE*)
EHAUG@FLHLAW.COM
Thomas J. Kowalski (*PRO HAC VICE*)
TKOWALSKI@FLHLAW.COM
Vicki Franks (*PRO HAC VICE*)
VFRANKS@FLHLAW.COM
Gina M. Bassi (*PRO HAC VICE*)
GBASSI@FLHLAW.*COM*
Anne-Marie C. Yvon (*PRO HAC VICE*)
AYVON@FLHLAW.com
FROMMER LAWRENCE & HAUG LLP
745 Fifth Avenue, New York, New York 10151
Telephone:  (212) 588-0800
Facsimile:  (212) 588-0500

Attorneys for Defendants,
OXFORD BIOMEDICA PLC,
BIOMEDICA, INC., and
OXFORD BIOMEDICA (UK) LTD.

WEST\21495723.1
354423-000002

1 DLA PIPER US LLP
   RICHARD T. MULLOY
2 richard.mulloy@dlapiper.com
   401 B Street, Suite 1700
3 San Diego, California 92101
   Telephone: (619) 699-4787
4 Facsimile: (619) 699-2701

5 FROMMER LAWRENCE & HAUG LLP
   EDGAR H. HAUG (*Pro Hac Vice*)
6 ehaug@flhlaw.com
   THOMAS J. KOWALSKI (*Pro Hac Vice*)
7 tkowalski@flhlaw.com
   VICKI FRANKS (*Pro Hac Vice*)
8 vfranks@flhlaw.com
   GINA M. BASSI (*Pro Hac Vice*)
9 gbassi@flhlaw.com
   ANNE-MARIE C. YVON (*Pro Hac Vice*)
10 ayvon@flhlaw.com
   745 Fifth Avenue, New York, New York 10151
11 Telephone: (212) 588-0800
   Facsimile: (212) 588-0500
12
   Attorneys for Defendants,
13 OXFORD BIOMEDICA PLC,
   BIOMEDICA, INC., and
14 OXFORD BIOMEDICA (UK) LTD.

15

16

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

17 BAVARIAN NORDIC A/S.,                    CASE NO. 08cv1156

18        Plaintiff,                        **DECLARATION OF PETER J.
                                            NOLAN IN SUPPORT OF OXFORD
19 vs.                                      BIOMEDICA PLC'S AND OXFORD
                                            BIOMEDICA (UK) LTD.'S MOTION
20 OXFORD BIOMEDICA PLC,                    TO DISMISS**
   BIOMEDICA, INC., and
21 OXFORD BIOMEDICA (UK) LTD.,              Complaint Filed: June 30, 2008

22        Defendants.

23

24

25

26

27

28

1    Under 28 U.S.C. § 1746, I, Peter J. Nolan, declare as follows:

2        1.    I am Executive Director and Senior Vice President, Commercial Development of

3    Oxford BioMedica plc. I am familiar with the Complaint in the above-captioned lawsuit. I am

4    empowered to speak on behalf of Oxford BioMedica plc and Oxford BioMedica (UK) Ltd. as set

5    forth herein. This Declaration is in support of Oxford BioMedica plc's and Oxford BioMedica

6    (UK) Ltd.'s Motion to Dismiss the Complaint.

7        2.    Oxford BioMedica plc is a UK company publicly traded on the London Stock

8    Exchange (symbol OXB; referred to hereinafter as "OXB"). OXB has its principal place of

9    business at: The Medawar Centre, Robert Robinson Avenue, The Oxford Science Park,

10   OXFORD, OX4 4GA, UNITED KINGDOM.

11       3.    OXB owns all of the shares of Oxford BioMedica (UK) Limited ("OBM UK"), a

12   private limited company in the UK. OBM UK is thus a wholly owned subsidiary of OXB.

13   OBM UK also has its principal place of business at: The Medawar Centre, Robert Robinson

14   Avenue, The Oxford Science Park, OXFORD, OX4 4GA, UNITED KINGDOM. OXB operates

15   through OBM UK.

16       4.    BioMedica, Inc. ("BioMedica") is a Delaware corporation with its principal place

17   of business at 11622 El Camino Real, Suite 100, San Diego, CA 92130, USA. BioMedica is a

18   wholly-owned subsidiary of OXB.

19       5.    OBM UK owns the TroVax® vaccine. Neither OBM UK nor OXB has

20   commercially sold or offered to sell the TroVax® vaccine to sanofi-aventis or to any other person

21   or entity. The TroVax® vaccine is in a Phase III clinical trial for renal cell carcinoma under a

22   Special Protocol Assessment (SPA) agreement from the US Food and Drug Administration

23   ("FDA"). This Phase III clinical trial is also known as "TroVax Renal Immunotherapy Survival

24   Trial" (Study No. NCT 00397345) or "TRIST." I have attached, as Exhibit A, OXB's May 12,

25   2006 Press Release, entitled "Oxford BioMedica Secures Agreement with FDA on Special

26   Protocol Assessment for Phase III Trial of TROVAX in Renal Cancer," which describes this

27   agreement. The FDA agreed to and influenced the design, conduct, analysis, and endpoints of

28   this clinical trial.

00573558

1      6.    Bavarian Nordic ("BN") complains about certain clinical studies being conducted

2  in the United States. These clinical trials of the TroVax® vaccine, and any other ongoing clinical

3  trials, are being conducted for the sole purpose of determining the safety and efficacy of the

4  drug. If the clinical trials are successful, this information will be used to develop and submit an

5  application to the FDA to be able to market the TroVax® vaccine in the United States. These

6  clinical trials are necessary steps to have a drug approved by the FDA.

7      7.    Furthermore, no patient in the United States will be administered the TroVax®

8  vaccine in TRIST because administration of the TroVax® vaccine has been suspended. There

9  are no plans to again administer the TroVax® vaccine in the TRIST clinical trial. I have

10  attached, as Exhibit B, OXB's July 11, 2008 Press Release, entitled "Oxford BioMedica

11  Announces Data Safety Monitoring Board Recommendation For TroVax® Phase III Trist

12  Study."

13      8.    I hereby declare under penalty of perjury that the foregoing is true and correct to

14  the best of my knowledge, information, and belief.

15

16  Dated: August 12, 2008

Peter J. Nolan

17

18

19

20

21

22

23

24

25

26

27

28

00573558

# EXHIBIT A



About Us   Clinical Trials   Products   Technology   Collaborations   Investors   News   Contact Us   

**News** / 12 May 2006

2006/OB/09



# OXFORD BIOMEDICA SECURES AGREEMENT WITH FDA ON SPECIAL PROTOCOL ASSESSMENT FOR PHASE III TRIAL OF TROVAX IN RENAL CANCER

Oxford BioMedica (LSE: OXB), the leading gene therapy company, announced today that it has received a Special Protocol Assessment (SPA) agreement from the US Food and Drug Administration (FDA) for a Phase III trial of TroVax in renal cell carcinoma. The written agreement from the FDA specifies the design, conduct, analysis and endpoints of the trial, which, if successful, will support an efficacy claim in a regulatory submission for product registration. The SPA was received at the end of the FDA's first review period following Oxford BioMedica's application in March 2006. Oxford BioMedica plans to start the trial in the second half of 2006.

The Phase III trial, referred to as TRIST (TroVax Renal Immunotherapy Survival Trial), will evaluate whether TroVax immunotherapy, added to first line standard of care therapy, prolongs the survival of patients with locally advanced or metastatic clear cell renal adenocarcinoma. The trial will be a randomised, placebo-controlled, two-arm study of TroVax in combination with standard of care versus placebo with standard of care. Standard of care will be interleukin-2, interferon-alpha or Sutent® (sunitinib). Study treatment will be stratified between the standard of care options to ensure that the allocation of TroVax and placebo is rigorously balanced. Recruitment will be approximately 700 patients in about 120 centres in the USA, European Union and Eastern Europe. The primary endpoint will be survival improvement and secondary endpoints will include progression free survival, tumour response rates and quality of life scores. The protocol includes the appointment of a Safety and Efficacy Monitoring Board (SEMB) to assess the safety and potential efficacy of the drug combinations at various time points during the trial.

Oxford BioMedica is also discussing the TRIST trial with regulatory authorities in Europe. In addition, the Company plans to seek 'orphan drug' designation for TroVax in both the USA and Europe for renal cell carcinoma. The granting of orphan drug status would provide Oxford BioMedica and any prospective commercial partner with various benefits in terms of regulatory exclusivity, assistance with clinical development and a waiver of filing fees.

Oxford BioMedica's Chief Medical Officer, Dr Mike McDonald, said: *"We are delighted to have secured the SPA within such a short time period. We have worked closely with the FDA on the design of the TRIST study and they have been extremely supportive. We look forward to starting this pivotal trial of TroVax in a cancer setting where there are few treatment options and there is a need for new approaches that are both safe and effective."*

Commenting on the SPA, Oxford BioMedica's Chief Executive, Professor Alan Kingsman, said: *"This is a significant milestone for the Company. It represents the successful achievement of the first of our major goals for 2006."*

- ends -

2008
**Archive**
2007
2006
2005
2004
2003
2002
2001
2000
1999
1998
1997

Email **Alerts**
Enter your email address to be kept informed of news updates

Subscribe

Unsubscribe
Enter your email address to be removed from our mailing list

Unsubscribe



Return to the News

---

**Notes**

1.  **Oxford BioMedica plc**
    Oxford BioMedica (LSE: OXB) is a biopharmaceutical company specialising in the development of novel gene-based therapeutics with a focus on the areas of oncology and neurotherapy. The Company was established in 1995 as a spin out from Oxford University, and is listed on the London Stock Exchange.

    Oxford BioMedica has core expertise in gene delivery, as well as in-house clinical, regulatory and manufacturing know-how. In oncology, the pipeline includes an immunotherapy and a gene therapy in multiple Phase II trials, and a preclinical targeted antibody therapy in collaboration with Wyeth. In neurotherapy, the Company's lead product is a gene therapy for Parkinson's disease, which is expected to enter clinical trials in 2006, and four further preclinical candidates. The Company is underpinned by over 80 patent families, which represent one of the broadest patent estates in the field.

    The Company has a staff of approximately 70 split between its main facilities in Oxford and its wholly owned subsidiary, BioMedica Inc, in San Diego, California. Oxford BioMedica has corporate collaborations with Wyeth, Intervet, Sigma-Aldrich, Viragen, MolMed, Virxsys and Kiadis; and has licensed technology to a number of companies including Merck & Co, Biogen Idec and Pfizer.

2.  **TroVax®**
    TroVax is Oxford BioMedica's leading cancer immunotherapy product. It is designed specifically to stimulate an anti-cancer immune response and has potential application in most solid tumour types. TroVax targets the tumour antigen 5T4, which is broadly distributed throughout a wide range of solid tumours. The presence of 5T4 is correlated with poor prognosis. The product consists of a poxvirus (MVA) gene transfer system, which delivers the gene for 5T4 and stimulates a patient's body to produce an anti-5T4 immune response. This immune response destroys tumour cells carrying the 5T4. TroVax has attracted external support from Cancer Research UK and the US National Cancer Institute. Over 100 patients have now been treated with TroVax in six clinical trials (collectively over 400 doses). The Company is targeting colorectal cancer and renal cell carcinoma (RCC) as lead indications for the development of TroVax. Renal cell carcinoma is an indication where TroVax might achieve a rapid route to product registration.

3.  Renal Cell Carcinoma
    Renal cell carcinoma (RCC) is the most common form of kidney cancer in the USA. More than 150,000 people are newly diagnosed with RCC worldwide each year. Prognosis is very poor. If RCC has metastasised to other organs at the time of first diagnosis, the five-year survival rate is less than 5%. In the USA and Europe, RCC accounts for more than 33,000 deaths each year. To date, neither radiation, chemotherapy, nor hormonal therapy prolongs the survival of metastatic RCC patients. Commonly used treatments for patients with metastatic RCC include cytokines such as interferon-alpha, which has limited efficacy, and interleukin-2, which is associated with severe side effects at high dose levels. Two new drugs have recently received US approval for the treatment of metastatic RCC, Nexavar® and Sutent®, although there are no published data showing that they offer a survival benefit.

    There are several reasons for considering that a cancer vaccine such as TroVax might be highly appropriate for this patient group. There is circumstantial evidence that immune responses may be important in dictating the outcome for RCC patients and a vaccine could potentiate this immune response. TroVax, in particular, may be the vaccine of choice since the expression of 5T4, the antigenic component of TroVax, is more prevalent in RCC than any other solid cancer analysed by Oxford BioMedica. 5T4 is present at high levels on a high proportion of cells in approximately 90% of tumours. Treatments for RCC generated sales of $600 million in 2004 according to Datamonitor.

4.  Special Protocol Assessment (SPA)
    The FDA's SPA process was implemented under the Prescription Drug User Fee Act (PDUFA) in November 1997. Under the SPA process, the FDA assesses the protocol design, conduct and data analyses of a trial. Once the protocol is agreed in writing, then the assessment is binding on the review division of the FDA as long as the protocol is followed, unless substantial scientific issues essential to determining the safety or efficacy of the drug are identified later. Clinical protocols for Phase III trials that are assessed under the SPA process can form the primary basis of an efficacy claim in a marketing application submitted to the FDA. Further information on the SPA process is available at www.fda.gov

**For further information please contact:**

**Oxford BioMedica plc**                                         Tel: +44 (0)1865 783 000
Professor Alan Kingsman, Chief Executive

**City/Financial Enquiries**                                     Tel: +44 (0)20 7466 5000
Lisa Baderoon/Mark Court/Mary-Jane Johnson

Buchanan Communications
**Scientific/Trade Press Enquiries**         Tel: +44 (0)20 7886 8150
Katja Stout/Gemma Bradley
College Hill - Life Sciences

Top of page

Website by College Hill - Life Sciences

# EXHIBIT B



About Us    Clinical Trials    Products    Technology    Collaborations    Investors    News    Contact Us



**News** 11 July 2008

2008/OB/21



## OXFORD BIOMEDICA ANNOUNCES DATA SAFETY MONITORING BOARD RECOMMENDATION FOR TROVAX® PHASE III TRIST STUDY

**Oxford, UK - 11 July 2008:** Oxford BioMedica (LSE: OXB), a leading gene therapy company, announced today that the independent Data Safety Monitoring Board (DSMB) for the Phase III TRIST study of TroVax in renal cancer has recommended that the trial should continue but that further vaccinations be discontinued. TroVax is Oxford BioMedica's novel therapeutic cancer vaccine, which is being developed in collaboration with sanofi-aventis.

Following its fourth interim review of the TRIST study, the DSMB advised that TroVax administered according to the protocol will not meet the predefined primary efficacy endpoint, but there is important scientific merit and more to be learned by additional follow up of all patients. Hence, the DSMB's recommendation is to continue the study but discontinue further vaccinations. Oxford BioMedica has implemented the DSMB's recommendation. In addition, the Company intends to amend the statistical plan of the study to determine whether patient outcome is dependent on the number of TroVax doses administered.

Oxford BioMedica and, its partner, sanofi-aventis, will evaluate the available data and the implications on the development plan for TroVax, including the planned Phase III trials in colorectal cancer. The companies will discuss the proposed TRIST protocol amendments with the regulatory authorities. With these amendments, a focus of the ongoing TRIST study will be to explore the number of doses that provide optimal benefit. In particular, it may be that the optimal benefit-to-risk ratio is delivered without the requirement for as many vaccinations as specified in the original TRIST study protocol. It is unlikely that the TRIST study alone will support registration of TroVax in renal cancer, although the trial may ultimately demonstrate a survival advantage for TroVax, and the results may form part of a regulatory submission alongside an additional confirmatory trial.

The role of the DSMB is to monitor, periodically, the data emerging from the study to determine whether there are issues arising that would warrant modification of the protocol or early termination of the study. The DSMB is independent of Oxford BioMedica and sanofi-aventis.

The TRIST (TroVax Renal Immunotherapy Survival Trial) study is a randomised and placebo-controlled Phase III trial, designed to evaluate TroVax in combination with standard of care in locally advanced or metastatic clear cell renal carcinoma. The trial was initiated in November 2006 and completed recruitment of 733 patients in March 2008 in more than 100 sites in the USA, European Union and Eastern Europe. The original trial protocol, which was the subject of a Special Protocol Assessment by the US Food and Drug Administration (FDA), allowed for patients to receive up to 13 immunisations over 73 weeks.

Dr Mike McDonald, Chief Executive of Oxford BioMedica, said: *"This news is clearly disappointing. However, there is good reason to continue the study and potentially a late survival benefit for TroVax may still be demonstrated. The proposed trial amendment will assess whether the maximum benefit-to-risk ratio is dependent on an optimal number of doses.*

2008
**Archive**
2007
2006
2005
2004
2003
2002
2001
2000
1999
1998
1997

Email **Alerts**
Enter your email address to be kept informed of news updates

Subscribe

Unsubscribe
Enter your email address to be removed from our mailing list

Unsubscribe



*We remain optimistic that TroVax may show benefit in this population after these protocol amendments. With our partner, sanofi-aventis, we will provide an update on the TRIST study and the development plan for TroVax in due course."*

Dr McDonald added: *"In addition to TroVax, we have a broad pipeline of innovative drug candidates and we will continue to focus our resources on deriving maximum value for both patients and shareholders, while maintaining the Company's financial strength. In particular, we look forward to reporting initial results from the Phase I/II trial of ProSavin in Parkinson's disease in September. In addition, we are working diligently towards the start of clinical trials of RetinoStat in neovascular age-related macular degeneration."*

- ends -

**Conference Call and Audio Web Cast on Friday, 11 July at 10.00am BST**

Oxford BioMedica's management will host a conference call for analysts at 10.00am BST on Friday, 11 July 2008, to discuss the DSMB's recommendation for the TroVax Phase III TRIST study. The dial-in details for analysts are available from Buchanan Communications (+44 (0) 20 7466 5000). A live audio web cast of the conference call will be available through the website homepage. This will also be available for replay shortly after the conference call.

Return to the News

---

**Notes**

1.  **Oxford BioMedica plc**
    Oxford BioMedica (LSE: OXB) is a biopharmaceutical company specialising in cancer immunotherapy and gene-based therapies. The Company was established in 1995, as a spin-out from Oxford University, and is listed on the London Stock Exchange.

    The Company has a platform of gene delivery technologies, which are based on highly engineered viral systems. Oxford BioMedica also has in-house clinical, regulatory and manufacturing know-how. TroVax® is the Company's therapeutic vaccine, which is in clinical development for multiple solid cancers. The product is licensed to sanofi-aventis for global development and commercialisation. Oxford BioMedica has three other products in clinical development, including ProSavin®, a novel gene-based treatment for Parkinson's disease, in a Phase I/II trial. The Company is underpinned by over 80 patent families, which represent one of the broadest patent estates in the field. The Company has a staff of approximately 85. Oxford BioMedica has collaborations with sanofi-aventis, Wyeth, Sigma-Aldrich, MolMed and Virxsys. Technology licensees include Biogen Idec, Merck & Co, GlaxoSmithKline and Pfizer.

    Further information is available at www.oxfordbiomedica.co.uk

2.  **TroVax®**
    TroVax is Oxford BioMedica's novel therapeutic cancer vaccine, which is being developed in collaboration with sanofi-aventis. It is designed specifically to stimulate an anti-cancer immune response and has potential application in most solid tumour types. TroVax targets the tumour antigen 5T4, which is broadly distributed throughout a wide range of solid tumours. The presence of 5T4 is correlated with poor prognosis. The product consists of a Modified Vaccinia Ankara vector, which delivers the gene for 5T4 and stimulates a patient's body to produce an anti-5T4 immune response. This immune response destroys tumour cells carrying the 5T4 antigen.

**For further information please contact:**

| | |
|---|---|
| **Oxford BioMedica plc** | Tel: +44 (0)1865 783 000 |
| Mike McDonald, Chief Executive Officer | |
| Nick Woolf, Chief Business Officer | |
| **JPMorgan Cazenove Limited** | Tel: +44 (0)20 7588 2828 |
| James Mitford/Gina Gibson | |
| **City/Financial Enquiries** | Tel: +44 (0)20 7466 5000 |
| Lisa Baderoon/Mark Court/Mary-Jane Johnson | |
| Buchanan Communications | |

**Scientific/Trade Press Enquiries**        Tel: +44 (0)20 7457 2020
Holly Griffiths/Katja Stout/Claire Mosley
College Hill

**US Enquiries**        Tel: +1 646 378 2900
Thomas Fechtner
The Trout Group LLC

Top of page

Website by College Hill - Life Sciences

1   RICHARD T. MULLOY (Bar No. 199278)
    DLA PIPER US LLP
2   401 B Street, Suite 1700
    San Diego, CA  92101-3697
3   Tel:  619.699.4787
    Fax:  619.699.2701
4   E-mail: richard.mulloy@dlapiper.com

5   EDGAR H. HAUG
    THOMAS J. KOWALSKI
6   VICKI FRANKS
    ANNE-MARIE C. YVON
7   GINA M. BASSI
    FROMMER LAWRENCE & HAUG LLP
8   745 Fifth Avenue
    New York, NY 10151
9   Tel: (212) 588-0800
    Fax: (212) 588-0500
10
    Attorneys for Defendants
11  OXFORD BIOMEDICA PLC,
    BIOMEDICA, INC., AND
12  OXFORD BIOMEDICA (UK) LTD.

13

14                       UNITED STATES DISTRICT COURT

15                     SOUTHERN DISTRICT OF CALIFORNIA

16  BAVARIAN NORDIC A/S,                    CV NO.  08 CV 1156 L (RBB)

17            Plaintiff,                    **PROOF OF SERVICE**

18        v.                               Judge:  Hon. M. James Lorenz
                                           Magistrate Judge:  Hon. Ruben B. Brooks
19  OXFORD BIOMEDICA PLC, an English
    public limited company; BIOMEDICA,     Complaint:  June 30, 2008
20  INC., a Delaware corporation; and
    OXFORD BIOMEDICA (UK) LTD., an
21  English private limited company,

22            Defendants.

23

24

25

26

27

28

WEST\21473726.1                          -1-
                                               CV NO.  08 CV 1156 L (RBB)

1

**PROOF OF SERVICE**

2

*BAVARIAN NORDIC A/S v. OXFORD BIOMEDICA, PLD, et al.*

3

**Case No. 08 CV 1156 L (RBB)**

4

5     I am a resident of the State of California, over the age of eighteen years, and not a party to

6   the within action.  My business address is DLA Piper US LLP, 401 B Street, Suite 1700,

7   San Diego, CA 92101-42907.  I hereby certify that on August 18, 2008, I caused the following

8   document(s) to be electronically filed with the Clerk of the Court and served on all parties to this

9   action using the CM/ECF system:

10   - **OXFORD BIOMEDICA PLC'S AND OXFORD BIOMEDICA (UK) LTD.'S
      NOTICE OF MOTION AND MOTION TO DISMISS FOR FAILURE TO STATE
11      A CLAIM, AND LACK OF SUBJECT-MATTER JURISDICTION**

12   - **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF OXFORD
      BIOMEDICA PLC'S AND OXFORD BIOMEDICA (UK) LTD.'S MOTION TO
13      DISMISS FOR FAILURE TO STATE A CLAIM AND LACK OF SUBJECT-
      MATTER JURISDICTION**

14

15   - **DECLARATION OF PETER J. NOLAN IN SUPPORT OF OXFORD
      BIOMEDICA PLC'S AND OXFORD BIOMEDICA (UK) LTD.'S MOTION TO
      DISMISS**

16

17

18   **Michael L Kirby**                          ☒ Via CM/ECF
     Kirby Noonan Lance and Hoge LLP             ☐ Via Email (PDF)
     Diamond View Towers                         ☐ Via First Class Mail
19   350 Tenth Avenue                            ☒ Via Overnight Mail
     Suite 1300                                  ☐ Via Hand Delivery
20   San Diego, CA 92101                         ☐ Overnight Mail
     (619)231-8666                               ☐ Via Facsimile
21   Fax: (619)231-9593
     Email: mkirby@knlh.com
22

23   **Christopher M. Morrison**                 ☒ Via CM/ECF
     **David C. Kravitz**                        ☐ Via Email (PDF)
     **Theodore J. Folkman**                     ☐ Via First Class Mail
24   Hanify & King PC                            ☒ Via Overnight Mail
     One Beacon Street                           ☐ Via Hand Delivery
25   Boston, MA 02108                            ☐ Overnight Mail
     (617)423-0400                               ☐ Via Facsimile
26   Fax: (617)423-0498
     Email: cmm@hanify.com
27   Email: dck@hanify.com
     Email: tjf@hanify.com
28

1

2    I declare that I am employed in the office of a member of the Bar of or permitted to practice

3    before this Court at whose direction the service was made.

4        Executed on August 18, 2008, at San Diego, California.

5

6                        Virginia R. Gomez

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28